WALTER J. ROTHSCHILD, Judge.
|2On March 9, 2007, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Alfred Declouet, with four counts of armed robbery in violation of LSA-R.S. 14:64, specifically referencing in the bill of information that the dangerous weapon used in the commission of the robbery was a firearm, per LSA-R.S. 14:64.3.[1] Counts one, two and three related to an incident that occurred on August 28, 2006. Count four related to an incident that occurred on October 14, 2006. Defendant pled not guilty to all counts at arraignment on March 12, 2007. Defendant filed a Motion to Suppress Statement and Identification, which was denied by the court on May 13, 2008.
On January 21, 2009, Defendant proceeded to trial before a twelve-person jury *94 on all four counts. On the same day, the State amended the bill of |sinformation, noting an entry of nolle prosequi as to co-defendant, Gary Woods, on all counts. Additionally, Defendant filed a Motion in Limine seeking to prohibit reference to Defendant’s assertion of his 5th and 6th Amendment rights, which was granted in part and denied in part on January 22, 2009. On January 28, 2009, the jury found Defendant guilty of armed robbery on counts one, two and three, and returned a verdict of not guilty as to count four.
Defendant filed a Motion for New Trial on March 19, 2009, which was denied by the court. Sentencing delays were waived, and on March 19, 2009, Defendant was sentenced to 22 years at hard labor in the Department of Corrections on each of the three counts, to be served consecutively. The State filed a multiple offender bill of information on the same day, and Defendant denied the allegations therein. At a hearing on September 24, 2009, Defendant admitted to being a second felony offender. The trial court vacated Defendant’s original sentence on count one, and imposed an enhanced sentence of 49½ years’ imprisonment at hard labor, without benefit of parole, probation or suspension of sentence on count one, in accordance with LSA-R.S. 15:529.1, to run concurrently with all sentences being served and with each count. Defendant filed a written motion for appeal, which was granted on March 31, 2009.

FACTS

On August 26, 2006, Gary Woods and Michael Declouet, Defendant’s cousin, were at a house located at 1331 Port Street when they received a call from Defendant. Defendant told Gary and Michael that he had a job for them, and that he would pay them each $1,500 if they helped him rob a recording studio called Studio 440. According to Defendant, the studio was being targeted by an acquaintance of Defendant’s who wanted to open his own recording studio and eliminate the competition. According to the plan developed by Defendant, RMichael and Defendant were supposed to enter Studio 440 armed with guns and remove the recording equipment. In order to avoid suspicion in the event they were stopped by the police, Defendant designated Gary, who had a driver’s license and insurance, to be the driver.
When the three perpetrators arrived at Studio 440, Michael and Defendant exited the vehicle and headed toward the studio. Shortly thereafter, they saw a white Chevy Tahoe pull up in front of the studio. The driver of the Tahoe exited the vehicle and entered Studio 440. At this point, Michael and Defendant advised Gary that they would need him to accompany them inside because they did not know how many people were in the studio. Gary, Michael and Defendant approached the side door of the studio and knocked.
Because Defendant had been to the studio the night before under the pretext of inquiring about studio time, the three perpetrators were let into the studio. There were three other people inside when Defendant, Michael and Gary arrived, including the owner of the studio, Christopher Villagran, and two of his clients, Kernel Reynolds and Cory Singer. Defendant and Mr. Villagran had a short conversation about studio time, and Defendant, Michael and Gary subsequently moved towards the door as if they were going to leave the studio. At this point, Defendant and Michael pulled guns on the victims.
Mr. Reynolds tried to grab the gun from Michael and a struggle ensued. Defendant, Michael and Gary were able to subdue Mr. Reynolds, and Michael retrieved a gun that was in Mr. Singer’s possession and gave it to Gary. The three victims *95 were searched, stripped of their cell phones and cash, and ordered to get down on the ground. Mr. Singer was ordered to bind Mr. Villagran and Mr. Reynolds with duct tape. Afterwards, one of the perpetrators taped Mr. Singer’s hands behind his back. All three perpetrators wore gloves during the robbery.
IsAfter the victims were bound and placed in a recording booth, the perpetrators put the recording equipment into large, black garbage bags. The perpetrators asked the victims who owned the Chevy Tahoe and, after Mr. Singer said it belonged to him, forced Mr. Singer to give them his keys. The perpetrators loaded the equipment into the Chevy Tahoe and left the studio. Shortly thereafter, Mr. Villagran called the police.
Sergeant Larry Dyess of the Jefferson Parish Sheriffs Office, Robbery Division, participated in the investigation of the robbery at Studio 440. When the officers arrived, the victims provided details about the robbery and gave descriptions of the perpetrators. During the initial victim interviews, Mr. Villagran and Mr. Singer described one of the perpetrators as having three gold teeth and being the tallest of the three. Mr. Villagran also described the tallest perpetrator, the one who initially asked about recording time, as the ringleader of the group. At trial, Michael confirmed that Defendant was the tallest of the three perpetrators and the only one with gold teeth.
Approximately four months after the robbery, the police presented photographic lineups to Mr. Villagran, Mr. Reynolds and Mr. Singer. Mr. Villagran and Mr. Reynolds were unable to identify anyone from the lineups presented to them. Mr. Singer identified Defendant, Michael Declouet and Gary Woods as the three perpetrators of the Studio 440 robbery. Mr. Singer also identified Defendant as the tall perpetrator with the gold teeth. Mr. Singer testified at trial that he was one hundred percent certain that the people he identified in the photographic lineups were the people who participated in the robbery.
After he presented the photographic lineup to Mr. Singer, Sergeant Dyess obtained arrest warrants for Defendant, Michael Declouet and Gary Woods in connection with the Studio 440 robbery. Defendant was ultimately interviewed by | ¡^Sergeant Dyess and Detective David Mascaro, the officer investigating an armed robbery at Auto Zone in which Defendant had also been developed as a suspect, at the detective bureau. Prior to the interview, Sergeant Dyess read Defendant his rights and Defendant signed a Rights of Arrestee or Suspects Form.
Michael Declouet and Gary Woods ultimately pled guilty in federal court to conspiracy to interfere with commerce by threats of violence, a HOBBS Act violation, in connection with the robbery of Studio 440 and a number of other robberies. Both were incarcerated in federal prison at the time Defendant proceeded to trial. Michael Declouet was serving a sentence of 20 years imprisonment and Gary Woods had been sentenced to 18 years.

DISCUSSION

By this appeal, Defendant first contends that he was denied effective assistance of counsel because his trial attorney failed to request a jury instruction on the accomplice testimony given by Michael Declouet and Gary Woods at trial. Defendant preliminarily notes that the record is sufficient for a review of his ineffective assistance of counsel claim. Defendant first argues that, where the State’s case relies upon the uncorroborated testimony of a purported accomplice, the trial judge should instruct the jury to treat such testimony with great caution. Defendant con *96 tends that a cautionary accomplice instruction is required unless there is material corroboration of the accomplice’s testimony, and argues that there was no material corroboration of Michael Declouet and Gary Woods’ testimony in the instant case. Specifically, Defendant contends that Cory Singer’s identification of Defendant was very weak, and that the identification testimony was in direct conflict with the testimony of Christopher Villagran, who was unable to make an identification. As a result, Defendant argues that trial counsel’s performance was |7deficient because he failed to have the jury instructed on accomplice testimony, and that this deficiency denied him a fair trial.
The State contends that Defendant’s claim is without merit because a special instruction on accomplice testimony is only applicable when the accomplice’s testimony is uncorroborated. The State argues that, in the instant case, two of the three witnesses to the armed robbery testified at trial and corroborated the testimony of Michael Declouet and Gary Woods. Specifically, the State contends that the evidence offered at trial corroborated the accomplice testimony because it confirmed material points in the testimony offered by Michael Declouet and Gary Woods, and confirmed Defendant’s identity and relationship to the situation. Therefore, because trial counsel was under no obligation to request an instruction on accomplice testimony, the State contends that Defendant has failed to meet his burden of proving an ineffective assistance of counsel claim under Strickland, v. Washington.[2]
Generally, a claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. Robertson, 08-297, p. 12 (La.App. 5 Cir. 10/28/08), 995 So.2d 650, 659, writ denied, 08-2962 (La.10/9/09), 18 So.3d 1279 (citing State v. Lagarde, 07-123, pp. 16-17 (La.App. 5 Cir. 5/29/07), 960 So.2d 1105, 1117, writ denied, 07-1650 (La.5/9/08), 980 So.2d 684). The rationale behind such procedure is that a full evidentiary hearing may be conducted to explore the issue. State v. Murray, 36,137, p. 37 (La.App. 2 Cir. 8/29/02), 827 So.2d 488, 507, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020 (citing State v. Watson, 2000-1580 (La.5/14/02), 817 So.2d 81). However, when the record contains sufficient evidence to rule on the Rmerits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy. State v. Grimes, 09-2, p. 10 (La.App. 5 Cir. 5/26/09), 16 So.3d 418, 426, writ denied, 09-1517 (La.3/12/10), 28 So.3d 1023 (citing State v. Taylor, 04-346 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595). Although the State notes that claims for ineffective assistance of counsel should generally not be considered on direct review, we find that the record is sufficient to rule on the merits of the claim. See State v. Stewart, 08-1265, p. 14 (La.App. 5 Cir. 5/26/09), 15 So.3d 276, 285, writ denied, 09-1407 (La.3/5/10), 28 So.3d 1003.
A criminal defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. Grimes, 09-2 at 10, 16 So.3d at 425. To prove ineffective assistance of counsel, a defendant must show both that (1) his attorney’s performance was deficient, and (2) the deficiency prejudiced him. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042, p. 9 (La.App. 5 Cir. 4/26/94), *97 636 So.2d 1069, 1075, writs denied, 94-0475 (La.4/4/94), 637 So.2d 450 and 94-1361 (La.11/4/94), 644 So.2d 1055). It is unnecessary to address the issues of both counsel’s performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La.App. 1 Cir.1992), writ denied, 614 So.2d 1263 (La.1993).
To establish the deficiency prong of the test, the defendant must show that counsel made errors so serious that he was not functioning as the “counsel” guaranteed by the Constitution. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish prejudice, the defendant must show that the errors were so serious that the defendant was deprived of a fair trial, a trial whose result is reliable. Id. The |9defendant must prove actual prejudice before relief will be granted. Serigny, 610 So.2d at 860. It is not sufficient for defendant to show that the error had some conceivable effect on the outcome of the proceeding. Id. Rather, he must show that but for the counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. State v. Robinson, 01-1305, p. 18 (La.App. 4 Cir. 4/17/02), 820 So.2d 571, 582, writ denied, 02-1640 (La.5/30/03), 845 So.2d 1068 (citing Strickland 466 U.S. at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236, writ denied, 1999-1982 (La.1/7/00), 752 So.2d 175).
A court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” State v. Dabney, 05-53, p. 5 (La.App. 5 Cir. 6/28/05), 908 So.2d 60, 63 (quoting Strickland, 466 U.S. at 689, 104 S.Ct. at 2065). Claims of ineffective assistance are to be assessed on facts of the particular case, taking into consideration the counsel’s perspective at the time. State v. LaCaze, 99-0584, p. 20 (La.1/25/02), 824 So.2d 1063, 1078-79, cert. denied, 537 U.S. 865, 123 S.Ct. 263, 154 L.Ed.2d 110 (2002). The Sixth Amendment does not guarantee er-rorless counsel or counsel judged ineffective by hindsight. LaCaze, 99-0584 at 20, 824 So.2d at 1078 (quotation omitted).
Under LSA-C.Cr.P. art. 807, a requested special jury charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. Stewart, 08-1265 at 14, 15 So.3d at 285. It need not be given if it is included in the general charge or in another special charge to be given. Id. (citing State v. Smith, 04-340, p. 11 (La.App. 5 Cir. 10/26/04), 888 So.2d 280, 288-89). A requested jury charge must be supported by the evidence. |10 Id. (citing Smith, 04-340 at 11, 888 So.2d at 289). The failure to read a requested special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. Id.
When the State relies upon the uncorroborated testimony of an accomplice, the trial court should instruct the jury to treat an accomplice’s testimony with caution. Stewart, 08-1265 at 14, 15 So.3d at 285. However, such a cautionary instruction is not required where there is material corroboration of the accomplice’s testimony. Id. (citations omitted). It is enough if there is evidence that confirms material points in an accomplice’s story, the defendant’s identity and some relationship to the situation. Stewart, 08-1265 at 14, 15 So.3d at 285 (citing State v. Schaffner, 398 So.2d 1032, 1035 (La.1981)). *98 Whether such an instruction should be given is within the sound discretion of the trial court.[3] Id. (citations omitted).
In the instant case, the testimony offered by Michael Declouet and Gary Woods was materially corroborated by Cory Singer and Christopher Villagran, the two victims who testified at trial. As detailed above, both Michael Declouet and Gary Woods testified that they were together when they received a call from Defendant about helping him rob Studio 440. Their testimony regarding the preparation for the robbery and arrival at the studio is likewise consistent. Similarly, their descriptions of the events that transpired after they entered the studio and encountered the victims are nearly identical.
More importantly, the testimony offered by Mr. Villagran and Mr. Singer regarding the details of the robbery are entirely consistent with the testimony Inoffered by Michael Declouet and Gary Woods. All four witnesses testified that the perpetrators entered the studio from the side door under the pretext of inquiring about studio time. All four witnesses recounted that after Defendant and Mr. Villagran spoke about studio time, the perpetrators moved towards the door as if they were going to leave the studio. Shortly thereafter, Defendant and Michael pulled their guns on the victims and Mr. Reynolds struggled with Michael in an attempt to get the gun.
All four witnesses testified that the perpetrators were able to subdue Mr. Reynolds, that Michael retrieved Mr. Singer’s gun and gave it to Gary, and that the victims were searched, ordered to the ground, and bound with duct tape. Michael and Gary’s testimony was further corroborated by the victims’ testimony that they were placed in a recording booth while the perpetrators put the recording equipment into garbage bags. All four witnesses testified about the conversation regarding the Chevy Tahoe and about the perpetrators forcing Mr. Singer to give them the keys to the vehicle. Consistent with Michael and Gary’s description, the victims testified that after the perpetrators loaded the equipment into the Chevy Tahoe, they left the studio.
Moreover, evidence presented at trial appears to confirm Defendant’s identity and his relationship to the situation, supporting a finding that the accomplice testimony of Michael Declouet and Gary Woods was materially corroborated. See State v. Chesson, 03-606, p. 29 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 186, writ denied, 03-2913 (La.2/13/04), 867 So.2d 686 (citing Schaffner, 398 So.2d at 1035) (citing United States v. Lee, 506 F.2d 111 (D.C.Cir.1974), cert. denied, 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975)). As discussed above, Mr. Villagran and Mr. Singer described one of the perpetrators, the one who asked about recording time and the ring-leader of the group, as having | igthree gold teeth and being the tallest of the three. Michael testified at trial that, of the three perpetrators, Defendant was the tallest and the only one with gold teeth.
Importantly, Mr. Singer was presented with photographic lineups and identified Defendant, Michael Declouet and Gary Woods as the three perpetrators in the studio robbery. Mr. Singer also identified Defendant as the tall perpetrator with the *99 gold teeth. Mr. Singer testified that he was one hundred percent certain that the people he identified in the photographic lineups were the people who participated in the robbery.
In light of the foregoing, we find that the evidence presented at trial materially corroborated the accomplice testimony offered by Michael Declouet and Gary Woods. As discussed above, “great caution” instructions are required when a case involves uncorroborated accomplice testimony but are not mandatory when an accomplice’s testimony is materially corroborated. Stewart, 08-1265 at 14, 15 So.3d at 285; see also Chesson, 03-606 at 29, 856 So.2d at 186 (citing State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999)). Because a “great caution” instruction was not required in the instant case, trial counsel’s performance cannot be logically characterized as deficient under the first prong of Strickland. See State v. Zeno, 01-1340, p. 10 (La.App. 3 Cir. 3/13/02), 811 So.2d 1222, 1229, writ denied, 02-1051 (La. 11/15/02), 829 So.2d 423; see also State v. Stringer, 06-800, p. 34 (La.App. 3 Cir. 12/6/06), 949 So.2d 464, 487, writ denied, 07-0004 (La.9/14/07), 963 So.2d 996. Therefore, we find that Defendant has not overcome the strong presumption that his trial counsel’s conduct was within the wide range of reasonable professional assistance by proving that his performance was both deficient and prejudicial. Stewart, 08-1265 at 16, 15 So.3d at 286.
This assignment of error lacks merit.
| ^Defendant next contends that the State failed to provide timely and sufficient impeachment information concerning Gary Woods and Michael Declouet as mandated by Brady v. Maryland[4] and Giglio v. United States.[5] Specifically, Defendant argues that, although the State entered a nolle prosequi to Gary Woods’ armed robbery charge, it gave no pre-trial notice to the defense of its intent to dismiss the charges against Gary Woods. Defendant also contends that the State failed to provide any information to the defense concerning its refusal to charge Michael Declouet in the Studio 440 armed robbery. Finally, Defendant contends that the trial court permitted the State to give an explanation of the dismissal relating to Gary Woods, which misled the trier of fact and prejudiced Defendant. Defendant contends that the State’s failure to disclose impeaching information undermines the confidence in the jury’s verdict.
The State responds that Defendant has failed to state a cognizable Brady claim. First, the State argues that it did not suppress the fact that it entered a nolle prosequi to the charges against Gary Woods or the fact that it had not brought charges against Michael Declouet. Next, the State contends that neither fact was material to either the Defendant’s guilt or to his punishment. Additionally, the State notes that Defendant fails to show how advance disclosure of the nolle prosequi would have made a different result reasonably probable. Finally, the State contends that such error, if it exists, would be harmless in light of the testimony offered by Christopher Villagran and Cory Singer.
Pursuant to Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), a prosecutor may not suppress evidence which is favorable to the defendant and material of the issue of the defendant’s guilt or innocence. State v. Knapper, 579 So.2d 956, 959 (La.1991). *100 The failure to reveal such evidence adversely [ 14effects the defendant’s right to a fair trial. State v. Calloway, 97-796, p. 5 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, 562, writs denied, 98-2435 (La.1/8/99), 734 So.2d 1229 and 98-2438 (La.1/8/99), 734 So.2d 1229 (citing U.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). Favorable evidence has been held to include both exculpatory and impeachment evidence. Calloway, 97-796 at 5-6, 718 So.2d at 562 (citing U.S. v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). When a key witness testifies because of an agreement struck between a prosecutor and the witness, that information must be revealed to the defendant. State v. Williams, 338 So.2d 672 (La.1976)(citing Giglio, supra; Brady, supra; State v. Carney, 334 So.2d 415 (La.1976)). Evidence is material if there is a reasonable probability, sufficient to undermine confidence in the outcome, that the evidence, if disclosed to the defense, would have changed the outcome of the proceeding or created a reasonable doubt that did not otherwise exist. Knapper, 579 So.2d at 959 (citing Bagley, supra).
The prosecution must make timely disclosure of the favorable evidence to provide the defense with adequate opportunity to present the material effectively in its case. State v. Kemp, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545 (citing State v. Prudholm, 446 So.2d 729, 738 (La.1984)). Late disclosure as well as nondisclosure of exculpatory evidence may deprive the defendant of a fair trial. Kemp, 00-2228 at 7, 828 So.2d at 545 (citing State v. Williams, 448 So.2d 659, 665 (La.1984); State v. Landry, 388 So.2d 699, 702 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); State v. Roussel, 381 So.2d 796, 798 (La.1980)).
Brady and its progeny do not establish a general rule of discoverability, and not every case in which it is discovered post-trial that favorable evidence was withheld by the State will result in a reversal of the conviction. State v. Bright, 02-2793, p. 6 (La.5/25/04), 875 So.2d 37, 42. A prosecutor does not breach any constitutional duty to disclose favorable evidence unless the “omission is of sufficient significance to result in the denial of the defendant’s right to a fair trial.” Id. (citing Agurs, supra).
The initial question is whether the State withheld or suppressed evidence. Knapper, 579 So.2d at 959. Defendant first contends that the State should have given pre-trial notice of its intent to enter a nolle prosequi to Gary Woods’ armed robbery charge. In support of this contention, Defendant notes that he filed a Motion for Brady and Giglio Exculpatory Material in March of 2007, and that no discovery regarding this issue was provided by the State prior to trial. As revealed by the record, Defendant learned of the nolle pro-sequi during Defendant’s cross examination of Gary Woods on January 22, 2009. However, the amended bill of information indicates that a nolle prosequi was entered as to Gary Woods on all counts on January 21, 2009.
Despite the fact that Defendant did not learn of the nolle prosequi until trial, the record indicates that Defendant had ample opportunity to use the information for impeachment purposes, and in fact did so in a thorough manner. The information regarding the dismissal of the charges against Gary Woods and whether they were dismissed in exchange for his testimony was presented to the jury during the cross-examination of Gary Woods. Thus, Defendant appears to have had an adequate opportunity to present the material effectively in this case.
Moreover, the testimony offered by Gary Woods and Michael Declouet at trial *101 does not establish that either the nolle prosequi of Gary Woods’ armed robbery charge or the decision not to charge Michael Declouet with armed robbery were negotiated in exchange for their testimony or that either were otherwise promised anything for their cooperation. Specifically, Gary Woods testified that |1fihe pled guilty to different charges in federal court and that he had not been offered any deals or promised a reduction in his federal sentence in exchange for his testimony. Similarly, Michael Declouet testified that he pled guilty to charges in federal court and was serving a 20-year sentence. He further testified that there was no agreement with either the federal prosecutors or the state prosecutors for him to testify in order to secure the 20-year sentence. The jury heard fairly lengthy testimony from both Gary Woods and Michael Declouet, on direct and cross-examination, regarding their understanding of what they would receive by testifying and, as noted above, both testified that they expected nothing in return for their testimony. Defendant has offered no evidence that there was a deal between the State and either Gary Woods or Michael Declouet in which the State agreed not to pursue charges in exchange for testimony. As such, we fail to find that the evidence constitutes Brady material. See State v. Davis, 08-165, p. 12-13 (La.App. 5 Cir. 7/29/08), 993 So.2d 295, 302-04, writs denied, 08-2188 (La.5/1/09), 6 So.3d 810 and 08-2200 (La.5/1/09), 6 So.3d 811 (holding that evidence failed to show that the State violated Brady and Giglio by failing to timely disclose impeachment evidence regarding an alleged plea deal when the defendant failed to show that there was a deal between the State and witness in which witness received consideration for his testimony at the defendant’s trial); see also Williams, 338 So.2d at 677 (finding no violation of Brady and Giglio when it was not alleged or shown that the prosecutor’s action in nolle prosequing the burglary charge against the witness was negotiated in exchange for her testimony at trial nor that she was otherwise promised anything).
Finally, even if Defendant had offered evidence of agreements in exchange for testimony, Defendant has not shown that evidence, if timely disclosed, would have changed the outcome of the proceeding or created a reasonable doubt that did |17not otherwise exist. As discussed above, Defendant was able to effectively utilize the information during cross-examination of both witnesses. Moreover, even if Defendant had been able to establish bias sufficient to discredit the testimony of Gary Woods and Michael Declouet, their testimony was corroborated by the testimony of Cory Singer, who identified Defendant, and Christopher Villagran, whose testimony would have been sufficient to support a conviction for armed robbery.
To support a conviction for armed robbery, the State must prove beyond a reasonable doubt that there was a taking of anything of value from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64(A); State v. Thomas, 08-813, p. 6 (La.App. 5 Cir. 4/28/09), 13 So.3d 603, 606, writ denied, 09-1294 (La.4/5/10), 31 So.3d 361 (citing State v. Ragas, 07-3 (La.App. 5 Cir. 5/15/07), 960 So.2d 266, 271, writ denied, 07-1440 (La.1/7/08), 973 So.2d 732, cert. denied, — U.S.-, 129 S.Ct. 55, 172 L.Ed.2d 56 (2008)). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Johnson, 03-903 (La.App. 5 Cir. 12/9/03), 864 So.2d 645, 650.
*102 Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. State v. Fuller, 07-319, p. 5 (La.App. 5 Cir. 2/19/08), 980 So.2d 45, 49, writ denied, 2008-0705 (La.10/10/08), 993 So.2d 1282 (citing State v. Ingram, 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926). Positive identification by only one witness is sufficient to support a conviction. Fuller, 07-319 at 6, 980 So.2d at 49 (citing State v. Weaver, 05-169, p. 11 (La.App. 5 Cir. 11/29/05), 917 So.2d 600, 608, unit denied, 2006-0695 (La.12/15/06), 944 So.2d 1277).
Although the testimony of Michael De-clouet and Gary Woods bolstered the victims’ testimony, it cannot be said that any advance notice would have changed the outcome of the proceeding or created a reasonable doubt that did not otherwise exist. Moreover, the record does not reflect that Defendant was prejudiced by any delay in receiving the information. Finally, the identification and testimony of Cory Singer and Christopher Villagran was sufficient to support the requisite factual conclusion and conviction. This assignment of error is without merit.
Defendant contends that the trial court erred in allowing the State to introduce testimony that Defendant asked detectives about the possible sentence he would receive if he was convicted. Defendant argues that the statement had no relevant value at trial and that its probative value was far outweighed by its prejudicial effect because the statement implied that Defendant was guilty. Defendant asserts that, because this error contributed to the jury verdict, he is entitled to a new trial.
The State first notes that this issue was raised in a pre-trial Motion in Limine and rejected by the trial court. The State contends that the statement, which was made by Defendant after he had been given his Miranda[6] rights, was relevant in that it evidenced the Defendant’s concern for his involvement in the armed robbery and the legal consequences that would follow. The State further asserts that Defendant failed to show how the statement was unduly prejudicial. The State concludes that because Defendant has failed to meet his burden of showing an abuse of discretion by the trial court, the trial court’s ruling on admissibility should 119not be disturbed. Finally, the State asserts that even if the statement was improperly admitted, any error in this case would be harmless.
During an interview with Detective Dyess and Detective Mascaro on February 16, 2007, Defendant was questioned about the robberies under investigation. Prior to any questioning, Defendant was given his Miranda rights and waived his rights via a Rights of Arrestee or Suspect’s Form. At the hearing on the motion to suppress statements made by Defendant during this interview, Detective Dyess testified that the officers did not force, threaten, coerce, or intimidate or make any promises or inducements to Defendant to give a statement. Detective Dyess testified regarding statements made by Defendant, as follows:
Q. And did he initially talk with ya’ll?
A. Yes, he did. He was cooperative. He said that — he never denied doing any of the robberies. He just wanted to know how much time he was looking at. We informed him that we could not determine the amount of time he would get. That would have to happen in a court of law. We went on and talked about the cases again and ultimately he *103 said that we would like to tell us what happened, but he had hired an attorney and wanted an attorney to be present when he gave us a statement.
Q. When he said that, did questioning cease?
A. Yes, Sir. We actually asked if he would like to call his attorney and bring him in so that we could all talk about the case and he said he would rather talk to his attorney first, and then talk to us later, which he never called.
Defendant’s Motion to Suppress Statement and Identification was denied by the court on May 13, 2008.
Prior to trial, Defendant filed a Motion in Limine seeking to prohibit reference to Defendant’s assertion of his 5th and 6th Amendment rights and the inquiry regarding the amount of time he would get if convicted, which was granted in part and denied in part on January 22, 2009. The Motion in Limine specifically addressed the aforementioned testimony by Detective Dyess. Defendant first objected to admission of the testimony that Defendant did not deny doing any ofj^the robberies. Defendant also objected to admission of testimony that Defendant had hired an attorney and wanted to talk to his attorney before he spoke to the detectives. Finally, Defendant objected to admission of testimony that Defendant wanted to know how much time he would get if he were convicted.
In response, the State stipulated that it would not elicit testimony at trial about the Defendant failing to deny his culpability and contended that the other statements, which were made after Defendant was read his rights, should be deemed admissible. The court granted the motion in limine as to the testimony regarding Defendant’s failure to deny his culpability and his desire to speak with an attorney, but denied the motion in limine as to testimony regarding Defendant’s question about how much time he would get if he were convicted. Defendant objected to the court’s ruling that the statement regarding the amount of time he would get if convicted was admissible.
Detective Mascaro subsequently testified at trial regarding the statements Defendant made during the February 16, 2007 interview, as follows:
Q. Now, did he ask you any questions at any point after he had been Miran-dized?
A. Yes, he did.
Q. What did he ask?
A. He asked me if I could tell him how" much time he would get.
Defendant did not object to Detective Mas-caro’s testimony at trial.
As discussed above, the jury ultimately found Defendant guilty of armed robbery on counts one, two and three, and returned a verdict of not guilty as to count four. Defendant filed a Motion for New Trial on March 19, 2009, asserting that the trial court erred in permitting testimony regarding Defendant’s inquiry about how much time he was facing on the armed robbery charge, which was denied by the court.
121 Relevant evidence is any “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” State v. Mosby, 595 So.2d 1135, 1138 (citing LSA-C.E. art. 401). All relevant evidence is admissible, except as otherwise provided by law. LSA-C.E. art. 402. Even relevant evidence may be excluded “if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” Mosby, *104 595 So.2d at 1138 (citing LSA-C.E. art. 403).
The trial judge determines whether evidence is “relevant by deciding whether it bears a rational connection to the fact which is at issue in the case.” State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, 1333, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996). Additionally, the trial court is given great discretion in determining whether evidence is relevant, and absent a clear abuse of discretion, rulings on relevancy of evidence should not be disturbed on appeal. State v. Karam, 02-0163, p. 13 (La.App. 3 Cir. 7/31/02), 834 So.2d 1003 (citing State v. Anthony, 98-0406, p. 16 (La.4/11/00), 776 So.2d 376, 387, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000)).
A review of the Defendant’s statement, which was made at the detective bureau shortly after Defendant was Mirandized, indicates that the statement was relevant. As noted above, when asked at trial what Defendant had inquired about after he was read his rights, Detective Mascaro responded: “He asked me if I could tell him how much time he would get.” The statement evidences an acknowledgement of potential legal consequences for any involvement by Defendant in the armed robbery, and as such, bears a rational connection to facts at issue in the case. Moreover, the trial judge determined that the statement was 122relevant and that the probative value was not outweighed by the danger of undue prejudice, and Defendant has not established a clear abuse of discretion by the trial judge in his determination. Though Defendant argues that the statement was highly prejudicial because it implied that Defendant was guilty and concerned only with his sentence, the trial judge opined that the Defendant “just wanted to know much time he was looking at.” As such, we fail to find that Defendant has shown that he suffered any prejudice or, if so, that the prejudice outweighed the probative value of the statement.
Even assuming that the trial court erred by ruling the statement admissible, we find that any error in the admission of the statement is harmless because the guilty verdict in the instant case was surely unattributable to the error. State v. Bates, 95-1513, p. 5 (La.App. 1 Cir. 11/8/96), 683 So.2d 1370, 1374 (citing LSA-C.Cr.P. art. 921; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94). In light of the positive identification of Defendant by Cory Singer, and the substantial testimonial evidence offered by the State’s witnesses, including two accomplices and two victims, we find that any error in admitting the statement is harmless. This assignment of error is without merit.
Lastly, Defendant contends that the sentence imposed by the trial court was unconstitutionally excessive and that he should be resentenced in conformity with established statutory law and jurisprudence. Defendant notes that he was originally sentenced to 22 years imprisonment at hard labor on counts one, two, and three, and that he was subsequently resentenced pursuant to the multiple bill to 49½ years’ imprisonment at hard labor on count one, to run concurrently with counts two and three. Defendant argues that in imposing the sentence, the trial court failed to take notice of the factors articulated in LSA-C.Cr.P. art. 894.1, and | ^.asserts that the sentence imposed was grossly out of proportion to the seriousness of the offense.
The State responds that Defendant’s sentence is not excessive because the trial court did not abuse its broad sentencing discretion. Specifically, the State notes *105 that the maximum sentence for armed robbery is 99 years at hard labor, and argues that Defendant’s 22-year sentences are not only within the statutory guidelines, but below one-quarter of the maximum sentence. The State further responds that because Defendant did not object to a violation of LSA-C.Cr.P. art. 894.1, he did not preserve this issue for appeal, but is limited to a review of his sentence for constitutional excessiveness only. Finally, the State argues that because Defendant’s multiple offender sentence was imposed in conformity with a plea agreement, Defendant is precluded from appealing or seeking review of the sentence and the trial court was not required to give reasons for imposing such a sentence.
As discussed above, on March 19, 2009, Defendant was sentenced to 22 years at hard labor in the Department of Corrections on counts one, two and three, to be served consecutively. The State filed a multiple offender bill of information on the same day, and Defendant denied the allegations therein. At a hearing on September 24, 2009, Defendant admitted to being a second felony offender. The trial court vacated Defendant’s original sentence on count one, and imposed an enhanced sentence of 49½ years’ imprisonment at hard labor, without benefit of parole, probation or suspension of sentence on count one, in accordance with LSA-R.S. 15:529.1, to run concurrently with all sentences being served and with each count.
Defendant did not make or file a motion to reconsider his original sentence pursuant to LSA-C.Cr.P. art. 881.1, nor did he object to his sentence at the | ^sentencing hearing on March 19, 2009. Defendant did not make or file a motion to reconsider his multiple bill sentence pursuant to LSA-C.Cr.P. art. 881.1, nor did he object to his sentence at the sentencing hearing on September 24, 2009. The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a review of his sentence for constitutional excessiveness only. State v. Warmack, 07-311, p. 7 (La.App. 5 Cir. 11/27/07), 973 So.2d 104, 108 (citing State v. Stevenson, 05-52 (La.App. 5 Cir. 6/28/05), 908 So.2d 48, 55, writ denied, 05-2592 (La.6/2/06), 929 So.2d 1247); see also LSA-C.Cr.P. art. 881.1.[7]
The Eighth Amendment to- the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. State v. Pearson, 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 655. A sentence is considered excessive, even when it is within the applicable statutory range, if it imposes needless pain and suffering and is grossly disproportionate to the seriousness of the offense. Warmack, 07-311 at 7, 973 So.2d at 109. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the sense of justice. Pearson, 07-332 at 15, 975 So.2d at 655-56. The trial judge is afforded wide discretion in determining sentence, and the court of appeal will not set aside a sentence absent a clear abuse of the trial court’s discretion. Id. at 15, 975 So.2d at 656 (citing State v. Brown, 04-230, p. 4 (La.App. 5 Cir. 7/27/04), 880 So.2d 899, 902).
*106 In reviewing a trial court’s sentencing discretion, three factors are considered: 1) the nature of the crime, 2) the nature and background of the ^offender, and 3) the sentence imposed for similar crimes by the same court and other courts. Pearson, 07-332 at 15-16, 975 So.2d at 656. The relevant question on appeal is whether the trial court abused its broad sentencing discretion, and not whether another sentence might have been more appropriate. State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
Defendant was found guilty of three counts of armed robbery. LSA-R.S. 14:64(B) provides that whoever commits armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation or suspension of sentence. Thus, Defendant’s original 22-year sentences fall within the sentencing range prescribed by statute. See LSA-R.S. 14:64(B). The trial judge did not articulate his reasons for imposing the 22-year sentences at the time of sentencing. As noted above, the Defendant did not make or file a motion to reconsider his original sentence, nor did he object to his sentence at the sentencing hearing. As such, though Defendant argues that the judge failed to articulate his reasons for sentencing pursuant to LSA-C.Cr.P. art. 894.1, Defendant is precluded from raising this issue on appeal. State v. Freeman, 97-1115, pp. 7-8 (La.App. 5 Cir. 12/29/98), 727 So.2d 630, 635 (citing State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642).
In any event, this Court has held that where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with LSA-C.Cr.P. art. 894.1. State v. Sanders, 98-609, p. 4 (La.App. 5 Cir. 12/16/98), 728 So.2d 470, 472 (citing State v. Lanclos, 419 So.2d 475 (La.1982); State v. Tran, 97-640 (La.App. 4 Cir. 3/11/98), 709 So.2d 311). In the instant case, the record supports the sentence imposed. Defendant, a second felony offender, and his two accomplices, targeted and robbed |2fithe owner and clients of Studio 440. Defendant acted without provocation and, in committing the robbery, the perpetrators engaged in a physical struggle with at least one of the victims and held the victims at gunpoint, bound them with duct tape, took their cell phones and money and emptied the studio of equipment, and used one of the victim’s vehicles as a getaway car. The perpetrators’ use of firearms created a risk of death or great bodily harm. See State v. Robinson, 43,313, p. 3 (La.App. 2 Cir. 6/4/08), 986 So.2d 213, 216; State v. Ambeau, 08-1191, p. 11 (La.App. 4 Cir. 2/11/09), 6 So.3d 215, writ denied, 09-0719 (La.12/11/09), 23 So.3d 913. Defendant’s violent conduct, and the fact that a firearm was used during the commission of the crime, supports the imposition of the 22-year sentences.
Defendant argues that his 49½ year multiple offender sentence is constitutionally excessive, even though it is the mandatory minimum sentence prescribed by LSA-R.S. 15:529.1.[8] The Louisiana Su *107 preme Court has recognized that a mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Douglas, 03-1266 (La.App. 5 Cir. 2/23/04), 868 So.2d 896, 900, writ denied, 04-0955 (La.10/1/04), 883 So.2d 1006 (citing State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Cushinello, 01-109 (La.App. 5 Cir. 7/30/01), 792 So.2d 926, 929, writ denied, 01-2505 (La.9/20/02), 825 So.2d 1159). When a trial court determines that the minimum sentence mandated by LSA-R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment,” or that the sentence amounts to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” the trial judge must reduce the sentence to one that would not be constitutionally excessive. Douglas, 868 So.2d at 900 (citing Dorthey, 623 So.2d at 1280; State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 383). However, it is presumed that the mandatory minimum sentence under the Habitual Offender Law is constitutional. Douglas, 868 So.2d at 900 (citing Johnson, 709 So.2d at 676; State v. Harbor, 01-1261 (La.App. 5 Cir. 4/10/02), 817 So.2d 223, 226, writ denied, 02-1489 (La.5/9/03), 843 So.2d 388).
In order to rebut the presumption of constitutionality, the defendant must clearly and convincingly show that he is “exceptional, which ... means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case.” Douglas, 868 So.2d at 900 (citing Harbor, 817 So.2d at 227). When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Douglas, 868 So.2d at 900. Downward departures from the minimum sentence mandated by LSA-R.S. 15:529.1 should only occur in rare situations. Douglas, 868 So.2d at 900 (citing Johnson, 709 So.2d at 677).
Defendant has failed to clearly and convincingly show that the mandatory minimum sentence for him as a second felony offender is excessive. Defendant did not urge a downward deviation at the time of sentence. Defendant has not presented any evidence on appeal showing exceptional circumstances to justify a [^downward departure from the mandatory minimum sentence. As such, we find that a downward departure from the 49½ year sentence is unwarranted in the present case.
Finally, LSA-C.Cr.P. art. 881.2 A(2) precludes a defendant from seeking review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea. State v. Washington, 05-211, p. 5 (La.App. 5 Cir. 10/6/05), 916 So.2d 1171, 1173; State v. Cross, 06-866, p. 4 (La.App. 5 Cir. 4/11/07), 958 So.2d 28, 30 (citing State v. Jones, 05-840, p. 14 (La.App. 5 Cir. 3/28/06), 927 So.2d 514, 528). This Court has applied this provision to cases in which a defendant admits to the allegations in a habitual offender bill, as part of a sentencing agreement. Cross, 06-866 at 4, 958 So.2d at 30 (citing State v. Bolton, 02-1034, p. 7 (La.App. 5 Cir. 3/11/03), 844 So.2d 135, 142, writ denied, 03-1159 (La.11/14/03), 858 So.2d 417). A defendant *108 is therefore precluded from raising a claim of excessiveness on appeal when his sentence was imposed in conformity with a sentencing agreement which is set forth in the record at the time that he admitted to the allegations in a multiple bill. Cross, 06-866 at 4, 958 So.2d at 30 (citing State v. Stewart, 03-976 (La.App. 5 Cir. 12/30/03), 862 So.2d 1271; State v. Dixon, 03-382 (La.App. 5 Cir. 9/16/03), 858 So.2d 16, writ denied, 04-1567 (La.4/22/05), 899 So.2d 566).
As noted above, Defendant was informed, prior to admitting to the allegations contained in the multiple bill, that he would receive a 49½ year sentence on count one. He indicated his understanding of the sentencing range and the specific sentence he would be given, both in court and on his waiver of rights form. Since Defendant’s sentence was imposed in conformity with a plea agreement, which was set forth in the record at the time he admitted to the 123allegations in the multiple bill, Defendant is precluded from raising a claim of excessiveness on appeal. Cross, 06-866 at 5, 958 So.2d at 30.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters were discovered.
Our review indicates that Defendant’s sentences for armed robbery are considered indeterminate.[9] Armed robbery with a firearm, LSA-R.S. 14:64.3, is a more serious form of armed robbery for which the penalty range is effectively 15 to 104 years. State v. Hall, 43,125, p. 6 (La.App. 2 Cir. 6/4/08), 986 So.2d 863, 868, writ denied, 08-1511 (La.3/13/09), 5 So.3d 116. LSA-R.S. 14:64.3(A) provides for an additional penalty when the dangerous weapon used in the commission of an armed robbery is a firearm. Subsection (A) provides that “the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed pursuant to this Subsection shall be served consecutively to the sentence imposed under the provisions of R.S. 14:64.”
Although the State referenced the enhancement in the bill of information, neither the jury verdict sheet nor the jury charges reference “armed robbery with a firearm.” At trial, however, the State presented evidence through the testimony of Christopher Villagran, Cory Singer, Michael Declouet and Gary Woods that guns were the only weapons used in the commission of the armed robbery. Despite this fact, the verdict sheet did not include “armed robbery with a firearm” as a responsive verdict, and Defendant was simply found guilty of armed robbery. The Lfltrial judge did not reference LSA-R.S. 14:64.3 during sentencing, nor did he state that he was imposing an additional period of incarceration when imposing Defendant’s sentences. However, we find that the State intended to utilize the provisions of LSA-R.S. 14:64.3 and that the sentences are indeterminate because the trial judge did not state whether the sentences included the firearm enhancement.
This Court has previously found that a situation in which the trial court did not impose an additional penalty enhancement for the use of a firearm creates an indeter- *109 ruinate sentence that constitutes an error patent. See State v. Johnson, 08-1156, p. 16 (La.App. 5 Cir. 4/28/09), 9 So.3d 1084, 1094, writ denied, 09-1394 (La.2/26/10), 28 So.3d 268. In Johnson, this Court, in its error patent review, found that the defendant’s sentences related to his conviction for armed robbery with a firearm were indeterminate because the trial judge did not impose the mandatory five-year firearm enhancement. Id. Based upon the mandatory language of the penalty provision, this Court found that the defendant’s sentences were indeterminate and remanded the case for resentencing. Johnson, 08-1156 at 16-17, 9 So.3d at 1094-95.[10] See also State v. Duncan, 09-232 (La.App. 5 Cir. 11/10/09), 28 So.3d 410.
For the reasons stated herein, we find that the sentences imposed by the court are indeterminate and constitute error patent, and that the sentences are hereby vacated and remanded for resentencing according to law for clarification of whether Defendant’s sentences include any additional punishment under LSA-R.S. 14:64.3. See State v. Price, 04-812, p. 10 (La.App. 5 Cir. 3/1/05), 909 So.2d 612, 618.
| S1 Further, on resentencing, the trial court is ordered to inform Defendant of the applicable prescriptive period to file post-conviction relief. LSA-C.Cr.P. art. 930.8 provides that a defendant has two years from the date “the judgment of conviction and sentence has become final” within which to file an application for post-conviction relief. Subpart C of the article requires that the trial judge inform a defendant of the prescriptive period at the time of sentencing. Although the commitment indicates that an advisal was given regarding the two-year prescriptive period for seeking post-conviction relief under LSA-C.Cr.P. art. 930.8, a review of the transcript reveals that the trial judge did not advise Defendant of the prescriptive period after Defendant’s original sentencing on counts one, two and three. However, the record reveals that Defendant was given an advisal pursuant to LSA-C.Cr.P. art. 930.8 after he was re-sentenced on count one at the multiple bill sentencing hearing on September 24, 2009.
However, with regard to counts two and three, we hereby instruct the trial court on resentencing to (1) inform Defendant of the prescriptive period for seeking post-conviction relief in writing and (2) to file written proof in the district court record that Defendant has been given such notice. State v. Savoie, 09-103, p. 10 (La.App. 5 Cir. 5/12/09), 15 So.3d 207, 214, writ denied, 09-1306 (La.2/5/10), 27 So.3d 297 (citing State v. Fazande, 05-901, p. 10 (La.App. 5 Cir. 3/28/06), 927 So.2d 507, 513-14); State v. Stelly, 98-578, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.
It is also noted that the March 19, 2009 commitment indicates that Defendant’s three 22-year sentences are to be served concurrently. However, a review of the trial transcript reveals that the trial judge ordered that the sentences be served consecutively. With regard to the discrepancies between the transcript and the March 19, 2009 commitment, the transcript generally prevails where there |S2is a discrepancy between the minutes and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore order that the March 19, 2009 commitment be corrected to reflect that (1) Defendant was not informed of the prescriptive period for seeking post-conviction relief and (2) Defendant’s sentences are to be served consecutively so as *110 to maintain consistency with the trial transcript. We farther instruct the trial judge to direct the Clerk of Court to transmit the revised commitment to the Secretary of the Department of Corrections in the same manner as the original commitment was transmitted and instruct the Department of Corrections to provide Defendant with a copy of the revised commitment. See State v. Parks, 07-655, p. 20 (La.App. 5 Cir. 1/22/08), 977 So.2d 1015, 1029, writ denied, 08-0495 (La.12/19/09), 996 So.2d 1126.
Accordingly, Defendant’s convictions are affirmed and his sentence is hereby vacated. The case is remanded to the trial court for resentencing in conformity with this opinion, and the trial court is further instructed to correctly inform Defendant of the prescriptive period for post-conviction relief and to correct the commitment to maintain consistency with the trial transcript and to provide the Department of Corrections with a copy of the revised commitment.

CONVICTIONS AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS

. The bill of information also charged co-defendant, Gary Woods, with three counts of armed robbery in violation of LSA-R.S. 14:64, specifically referencing that the dangerous weapon used in the commission of the robbery was a firearm, per LSA-R.S. 14:64.3.

. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

. But compare State v. Matthews, 450 So.2d 644, 647 (La.1984), “A jury may convict upon an accomplice’s uncorroborated testimony.” See also State v. Higginbotham, 554 So.2d 1308, 1311 (La.App. 1 Cir.1989) and State v. Bonner, 39,187, pp. 6-7 (La.App. 2 Cir. 12/22/04), 895 So.2d 1, 5-6, writ denied, 06-1490 (La.3/9/07), 949 So.2d 435, citing, State v. Matthews, supra, for that proposition.

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. According to LSA-C.Cr.P. art. 881.1(E), the “[fjailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.”

. LSA-R.S. 15:529.1 provides that a convicted felon who thereafter commits a subsequent felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
G. Any sentence imposed under the provisions of this Section shall be without benefit of probation or suspension of sentence.
*107 Thus, as a second felony offender, Defendant faced a possible sentencing range of 49 ½ to 198 years imprisonment on count one. LSA-R.S. 15:529.1 (A)(1)(a). As noted, Defendant received a 49 ½ year sentence.

. It is noted that the sentence for count one was vacated after Defendant was resentenced as a multiple offender. As such, any errors patent relating to this sentence would be considered moot. See State v. Smith, 09-100, p. 4 (La.App. 5 Cir. 8/25/09), 20 So.3d 501, 502 n. 2., writ denied, 09-2102 (La.4/5/10), 31 So.3d 357.

. It is noted that one of the sentences remanded in Johnson was an enhanced sentence.