888 So.2d 280 (2004)
STATE of Louisiana
v.
Prescott SMITH.
No. 04-KA-340.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 2004.
*283 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Frank Brindisi, Vince Paciera, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
A. Bruce Netterville, Gretna, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., JAMES L. CANNELLA and CLARENCE E. McMANUS.
EDWARD A. DUFRESNE, JR. Chief Judge.
The Jefferson Parish District Attorney filed a bill of information on May 16, 2001, charging defendant, Prescott Smith, with one count of second degree kidnapping in violation of LSA-R.S. 14:44.1, and one count of armed robbery in violation of LSA-R.S. 14:64.[1] The matter proceeded to trial before a twelve person jury which found defendant guilty as charged on both counts. The trial court sentenced defendant to 40 years at hard labor on count one, second degree kidnapping, and 50 years at hard labor on count two, armed robbery. Both sentences were imposed without the benefit of parole, probation or suspension of sentence and were ordered to run concurrently with each other.
Thereafter, the state filed a multiple offender bill of information on the armed robbery conviction alleging defendant to be a second felony offender based on a 1999 conviction for theft over $500. After a multiple bill hearing, the trial court found defendant to be a multiple offender. The trial court vacated defendant's original 50 year sentence on the armed robbery conviction and resentenced him as a multiple offender to 198 years.
Defendant now appeals his convictions and his enhanced sentence.

FACTS
Between 2:00 and 3:00 a.m. on January 21, 2001, Raion Hill went to the Rhythm City Nightclub in New Orleans. After staying there approximately fifteen minutes, Mr. Hill exited the club and walked back to his vehicle. Before driving away, he observed a man, later identified as co-defendant Lionel Redditt, walk past the driver's side of his vehicle and make a comment about his car. Mr. Hill left the club and drove to Denny's Restaurant in Gretna. As he was leaving Denny's, Mr. Hill was approached by two men, one he recognized as Redditt and the other he later identified as defendant. Defendant pointed a gun at Mr. Hill's side and forced him into the back seat of his own vehicle while Redditt repeatedly asked the victim for drugs. Redditt got into the driver's *284 seat of the vehicle while defendant joined the victim in the back seat.
Redditt proceeded to drive toward New Orleans during which time he continually threatened to kill the victim. After passing the toll plaza, Redditt and defendant switched positions and defendant gave Redditt the gun. Thereafter, defendant drove to an ATM at the Bank One on Elysian Fields. The victim attempted to withdraw cash but was unable to do so because he had recently changed his PIN number and the machine would not release any cash. Defendant and Redditt then dropped the victim off around the corner and sped off in the victim's vehicle. The victim walked to a nearby gas station and called the police.
Detective Scott DeJong with the Jefferson Parish Sheriff's Office was assigned to investigate the kidnapping and armed robbery incident. He interviewed the victim and obtained a description of the perpetrators from which composite drawings were prepared. He also obtained the video surveillance tape from Bank One. After further investigation, Detective DeJong was able to prepare a photographic lineup containing Redditt. He showed the photographic lineup to the victim who positively identified Redditt as one of the perpetrators. Redditt subsequently gave a statement to Detective DeJong after which Detective DeJong prepared a photographic lineup containing defendant. The photographic lineup of defendant was shown to the victim who positively identified defendant as the other perpetrator. Defendant was arrested in April 2001 and charged with the crimes in the bill of information.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, defendant asserts that the trial court committed reversible error by admitting a prejudicial photograph of defendant.
The issue defendant seeks to raise by this assignment of error is unclear. In his appellant brief, defendant contends he was prejudiced by the state's use of the photograph of him at the Bank One ATM window with the victim.[2] He specifically objects to the state's use of the photo during Detective Scott DeJong's testimony but the basis of his objection is unclear. Defendant appears to assert the photograph is unreliable because Detective DeJong identified him in the photograph only after the victim viewed the photo and made the identification without being shown photographs of any other suspects. Defendant also complains the photograph is prejudicial because the victim was never shown a physical lineup nor was he shown photographic lineups of other suspects. The only legal authority defendant cites in his argument is State v. Morgan, 367 So.2d 779 (La.1979), as it relates to the use of photographic evidence in criminal cases.
The state responds by arguing the reliability of the identification process. However, defendant does not appear to challenge the identification process on appeal. Defendant filed a pre-trial motion to suppress identification which was denied after a hearing. Had defendant wished to raise the issue of the identification process, he could have done so by asserting it as an assignment of error. To the contrary, defendant only challenges the admissibility of the photograph taken at the ATM.
*285 To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged error as well as the grounds for the objection. LSA-C.Cr.P. art. 841(A); State v. Enclard, 03-283 (La.App. 5 Cir. 6/19/03), 850 So.2d 845, 853. In the present case, defendant failed to object to the admission of the photograph when offered into evidence by the state and failed to object to the use of the photograph during Detective DeJong's testimony. Therefore, defendant is precluded from raising this issue on appeal. See, State v. Brown, 03-581 (La.App. 5 Cir. 11/12/03), 861 So.2d 644, 653, writs denied, 03-3407 (La.4/2/04), 869 So.2d 875, and 04-0049 (La.4/2/04), 869 So.2d 877. Accordingly, this assigned error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assigned error, defendant argues that the trial court erred in denying his request for a mistrial when a state witness, co-defendant Lionel Redditt, invoked his Fifth Amendment right in front of the jury and refused to testify. Additionally, defendant contends Redditt made gestures toward him in the courtroom which warranted a mistrial. Defendant asserts he was prejudiced by the trial court's failure to admonish the jury to disregard Redditt's disruptive behavior and unsolicited remarks.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when trial error results in substantial prejudice to defendant, depriving him of a reasonable expectation of a fair trial. Whether a mistrial should be granted is within the sound discretion of the trial court and the denial of a motion for mistrial will not be disturbed absent an abuse of that discretion. State v. Ballay, 99-906 (La.App. 5 Cir. 2/29/00), 757 So.2d 115, 126, writ denied, 00-0908 (La.4/20/01), 790 So.2d 13.
We will first address Redditt's invocation of the Fifth Amendment in front of the jury. On the second day of trial, the state called Lionel Redditt to testify as its third witness. Redditt, a co-defendant, had been previously convicted of second degree kidnapping and armed robbery of Raion Hill in May 2002 and was sentenced in June of 2002. See, State v. Redditt, 03-354 (La.App. 5 Cir. 10/28/03), 868 So.2d 704, writ denied, 03-3484 (La.4/8/04), 870 So.2d 268. Immediately prior to Redditt taking the stand, a bench conference was held. Defense counsel expressed two concerns: 1) the invocation of a Fifth Amendment privilege in front of the jury, and 2) the prosecutor's questioning of Redditt about his conviction in the case. The parties agreed that, if Redditt intended to invoke his Fifth Amendment privilege, he could not do so in front of the jury. However, the prosecutor maintained that Redditt did not have the right to invoke the Fifth Amendment because he had already been convicted. The prosecutor further noted that he did not expect Redditt to invoke a Fifth Amendment privilege because Redditt had told the prosecutor on numerous occasions that he would testify.
After the bench conference, Redditt took the stand and was sworn in as a witness. The prosecutor first asked Redditt where he presently resided and Redditt responded that he was in Angola. The prosecutor then asked, "You've been convicted of a crime that put you there?" Redditt responded, "First off, I'd like to plead the Fifth cause these people making me lie on this man right here, I plead the Fifth Amendment, they making me lie, lie on this man right here." The trial court immediately removed the jury. After some *286 discussion, defense counsel moved for a mistrial. The trial court denied the motion for a mistrial after finding Redditt was not entitled to invoke the Fifth Amendment and, therefore, no prejudice resulted from the assertion of the non-existent privilege.
The trial court subsequently advised Redditt that he did not have the right to invoke the Fifth Amendment because he had been previously tried and convicted of the crimes for which defendant was currently on trial. The trial court threatened to hold Redditt in contempt of court if he refused to testify and requested that Lee Faulkner, an attorney employed by the Indigent Defender Board, counsel Redditt concerning his rights. Mr. Faulkner complied and then advised the trial court that Redditt had no intention of testifying or answering any questions propounded to him by the prosecution or the defense and that Redditt insisted on invoking a Fifth Amendment privilege despite the ruling of the court and the consequence of being held in contempt of court. The trial court had Redditt sworn in and questioned Redditt about his understanding of the trial court's ruling and his rights. Redditt stated on the record that he understood the trial court's ruling but adamantly stated he would not answer any questions. The trial court ordered Redditt to be taken back to the correctional center and held there until the trial was finished.
The next day, outside the presence of the jury, the trial court explained that it would allow the state to question Redditt and defense counsel noted his objection. The state indicated that it was in the process of obtaining an immunity agreement for Redditt and proceeded with its case by calling a different witness. Despite obtaining an immunity agreement and a motion to compel Redditt's testimony under LSA-C.Cr.P. art. 439.1, the state ultimately chose not to call Redditt back to the stand. Nonetheless, defendant asserts a mistrial should have been granted on the basis Redditt invoked the Fifth Amendment in front of the jury.
In State v. Smith, 96-261 (La.App. 3 Cir. 12/30/96), 687 So.2d 529, writ denied, 97-0314 (La.6/30/97), 696 So.2d 1004, the Third Circuit was faced with a similar issue when the defendant argued he was prejudiced when a witness invoked the Fifth Amendment in front of the jury. Similar to the present case, the witness had been previously convicted of the same crime for which the defendant was on trial. The witness' own attorney recognized, and the Third Circuit agreed, that the witness could not claim a Fifth Amendment privilege. Additionally, the state had obtained an order to compel the witness' testimony under LSA-C.Cr.P. art. 439.1 and had offered the witness immunity from any further prosecution. The trial court had further threatened the witness with contempt if he refused to testify. The witness was subsequently put on the stand, in open court, where he stated he would refuse to answer any questions about the case despite the trial court's order that he testify.
The Third Circuit first noted that the witness did not have a Fifth Amendment privilege to assert. The court then relied on Namet v. United States, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963) and applied a two-part test to determine whether reversible error had been committed when the witness refused to answer in the presence of the jury. The court first inquired into whether there was any prosecutorial misconduct and, second, whether the witness' refusal to answer added critical weight to the prosecution's case.
The court noted the circumstances surrounding the witness' testimony were fully discussed among the attorneys and the trial court before the witness took the stand. The court concluded there was *287 nothing in the record to show that the state attempted any underhanded tactics or hid its intentions from the trial court. The court also found that the witness did not provide any information upon which the defense could have cross-examined the witness and was not asked any questions regarding his confession. Therefore, the court concluded no inferences could be made by the witness' refusal to answer questions.
Likewise, in the present case, Redditt did not have a valid Fifth Amendment privilege as he had already been convicted. Applying the Namet analysis, we find that Redditt's assertion of the non-existent privilege in front of the jury was harmless. First, there is nothing in the record to suggest, nor does defendant assert, that the state knew Redditt would invoke a Fifth Amendment privilege. To the contrary, the record shows the state believed, based on its prior conversations with Redditt, that he would cooperate and testify. Thus, there is no evidence of prosecutorial misconduct.
Second, the invocation of the privilege did not add critical weight to the prosecutor's case in a form not subject to cross-examination. Redditt answered one question about where he resided before invoking a Fifth Amendment privilege. The prosecutor only asked one more question, which pertained to his conviction in the case, before the jury was removed. Redditt did not provide any information upon which the defense could have cross-examined him. He was not asked anything about his confession nor was he asked to reveal any specific information regarding the defendant or the incident.
Furthermore, the evidence against defendant was overwhelming. The victim identified defendant, in and out-of-court, as the person who put a gun to his side, forced him into his own vehicle, drove to the other side of the city, and left him on the street before taking the victim's vehicle. Based on the foregoing discussion, we find that the trial court did not abuse its discretion in denying defendant's motion for mistrial on the basis that Redditt invoked a Fifth Amendment privilege in front of the jury.
We will now address defendant's argument that the gestures made by Redditt toward him in the courtroom warranted a mistrial, or at the very least, an admonition. After Redditt refused to testify, the trial court announced that it was recessing defendant's trial for the day. Immediately thereafter, defense counsel stated for the record that he was informed that when Redditt had entered the courtroom, "there was some sort of gesture made between Redditt and ... Mr. Smith.... And apparently a greeting of some sort, high five or something like that." The trial court clarified that there was no high five but rather "a clear recognition and acknowledgement exchanged by some gestures between [defendant] while he was seated and Mr. Redditt as he approached this area after walking through the petition [sic]." Defense counsel then moved for a mistrial based on the gesture and Redditt's attitude as a whole.
The trial court denied the motion stating that Redditt's "attitude" was displayed to the jury only to the extent that he invoked the Fifth Amendment and noted that the jury was removed from Redditt's presence within seconds. The trial court further stated that the greeting exchanged between defendant and Redditt did not constitute grounds for a mistrial.
The law regarding mandatory mistrials is set forth in LSA-C.Cr.P. art. 770, and the law regarding discretionary mistrials and admonitions is set forth in LSA-C.Cr.P. *288 art. 771. LSA-C.Cr.P. art. 771 provides as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.[3]
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
In the present case, it is unclear what prejudice, if any, defendant may have suffered from Redditt's behavior. The trial court described the gesture as one of recognition between Redditt and defendant. Defendant does not explain how this prejudiced him. Additionally, the record does not indicate the gesture was seen by anyone other than the trial judge. Furthermore, Redditt's "attitude" is not readily apparent from the record. Defense counsel argued Redditt's attitude included slouching and his disdain for the court. The trial court noted that most of Redditt's attitude was displayed outside the presence of the jury. Based on these circumstances, we find that the trial court did not abuse its discretion in denying defendant's motion for mistrial based on Redditt's behavior.
Finally, with respect to defendant's complaint that the trial judge failed to admonish the jury, the defense counsel did not request that an admonition be given to the jury. In the absence of such a request, the trial judge need not admonish the jury. State v. McPherson, 98-1207 (La.App. 5 Cir. 3/30/99), 733 So.2d 634, 640.
Based on the foregoing discussion, we find that the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER THREE
In this assignment, defendant argues that the trial court committed reversible error in refusing to charge the jury with the law on accomplices as he requested. Defendant contends the jury should have been given an instruction on accomplice testimony because state witness, Andrew Phillips, had been arrested for the same charge even though the case against him was later dropped. The state maintains the trial court properly denied the request because Phillips was not a co-defendant or an accomplice and, therefore, such a jury instruction was not needed or warranted.
Under LSA-C.Cr.P. art. 807, a requested special jury charge shall be given by the court if it does not require qualification, limitation, or explanation, and *289 if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. A requested jury charge must be supported by the evidence. The failure to read a requested special jury charge constitutes reversible error only when there is prejudice to the substantial rights of the defendant or the violation of some constitutional or statutory right. State v. Sanborn, 02-257 (La.App. 5 Cir. 10/16/02), 831 So.2d 320, 329, writ denied, 02-3130 (La.9/26/03), 854 So.2d 346.
When the state relies upon the uncorroborated testimony of an accomplice, the trial court should instruct the jury to treat an accomplice's testimony with caution. However, such a cautionary instruction is not required where there is material corroboration of the accomplice's testimony. Whether such an instruction should be given is within the sound discretion of the trial court. State v. Schaffner, 398 So.2d 1032, 1035 (La.1981).
Andrew Phillips was called to testify for the state. He testified that he was with defendant and Redditt at the Rhythm City Nightclub on the night of the incident. Phillips stated he left the club alone in defendant's vehicle because defendant was going home with some girls. Phillips testified he received a phone call from defendant later that night telling him to meet him on Elysian Fields and Gentilly. When Phillips arrived, he saw defendant in a silver jeep and saw someone being put out of the car. According to Phillips, he knew something was wrong so he left the area. On cross-examination, Phillips admitted he had been arrested for the armed robbery and second degree kidnapping of the victim but stated the charges had been dropped because of inconsistent evidence. He denied he was offered any immunity in exchange for his testimony.
The above testimony does not indicate Phillips was an accomplice in the crimes for which defendant was charged. Additionally, there is no other evidence in the record that Phillips was an accomplice. Thus, the trial court properly denied defendant's request for a special jury instruction regarding accomplice testimony.
Nonetheless, even if Phillips could be considered an accomplice, his testimony was materially corroborated. The victim testified that he was dropped off in the Elysian Fields/Gentilly area by defendant. Additionally, the victim stated that defendant received a call on his cell phone while they were in the vehicle. The victim also testified that when he was put out of the vehicle, a second car, that had been following them, tried to hit him. Thus, the evidence presented at trial materially corroborated the testimony of Phillips, and the trial court did not abuse its discretion in refusing to give the special cautionary instruction requested by defendant.
Furthermore, the credibility of an accomplice's testimony was adequately covered by the trial court's general charge on credibility of witnesses. See, State v. Schaffner, 398 So.2d at 1035; State v. Sanborn, 831 So.2d at 330. Based on the foregoing discussion, we find no error in the trial court's refusal to give the special charge requested by defendant. Accordingly, the arguments raised by defendant in this assigned error are without merit.

ASSIGNMENT OF ERROR NUMBER FOUR
In his final assignment of error, defendant challenges his enhanced sentence as excessive. Defendant was found to be a second offender based on his armed robbery conviction. As a second felony offender, defendant faced an enhanced sentencing range between 49 1/2 years and 198 *290 years. LSA-R.S. 15:529.1. Defendant received the maximum sentence of 198 years under the Habitual Offender Law and now contends that the sentence is excessive. He points to the fact that the trial court failed to state reasons for imposing the maximum sentence except to say that he was receiving the same sentence as his friend. Defendant maintains this comment showed the trial court had personal animosity against him.
Although defendant filed a motion to reconsider his original sentence of 50 years on the armed robbery conviction, he did not object to or file a motion to reconsider his enhanced sentence of 198 years. LSA-C.Cr.P. art. 881.1 requires that a motion for reconsideration of sentence be made orally at the time of sentencing, or in writing, and that it set forth the specific ground on which the motion is based. The failure to object to a sentence or to comply with LSA-C.Cr.P. art. 881.1 limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Brown, 03-581 (La.App. 5 Cir. 11/12/03), 861 So.2d 644, 653, writs denied, 03-3407 (La.4/2/04), 869 So.2d 875, and 04-0049 (La.4/2/04), 869 So.2d 877.
Both the United States and the Louisiana Constitutions prohibit the imposition of excessive or cruel punishment. U.S. Const. amend. VIII; La. Const. of 1974, art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 758 So.2d 839. In reviewing a sentence for excessiveness, the appellate court must consider the punishment and the crime in light of the harm to society and gauge whether the penalty is so disproportionate as to shock our sense of justice, recognizing at the same time the wide discretion afforded the trial judge in determining and imposing sentence. State v. Brown, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, writ denied, 99-3148 (La.4/20/00), 760 So.2d 340.
Generally, maximum sentences are reserved for cases involving the most serious violations of the offense charged and the worst type of offender. State v. Rhea, 03-1273 (La.App. 5 Cir. 2/23/04), 868 So.2d 863, 870. However, trial judges are granted great discretion in imposing sentences and a sentence will not be set aside as excessive absent clear abuse of that broad discretion. State v. Bacuzzi, 97-573 (La.App. 5 Cir. 1/27/98), 708 So.2d 1065, 1068-1069. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. State v. Watts, 99-311 (La.App. 5 Cir. 8/31/99), 746 So.2d 58, 64, writ denied, 99-2733 (La.3/24/00), 758 So.2d 145.
This court previously considered the co-defendant's maximum enhanced sentence of 198 years and determined it was not excessive. State v. Redditt, 868 So.2d at 710-711. In so concluding, this court compared the cases of State v. Freeman, 00-238 (La.App. 3 Cir. 10/11/00), 770 So.2d 482, writ denied, 00-3101 (La.10/5/01), 798 So.2d 963 and State v. Doleman, 02-0957 (La.App. 4 Cir. 12/4/02), 835 So.2d 850, writ denied, 02-3101 (La.9/19/03), 853 So.2d 633, in which the Third and Fourth Circuits upheld maximum 198-year enhanced sentences for defendants' armed robbery convictions noting that the defendants threatened to kill the victim in each case while pointing the gun at the victim.
Armed robbery is a serious offense against the person. Defendant and *291 his accomplice placed the victim in fear of his life. A gun was held on the victim while he was threatened with his life during what must have been a terrifying ride from Gretna to New Orleans. The victim was then forced out of the vehicle and abandoned miles away from where the encounter began. Based on these facts and factually similar case law, we do not find that defendant's enhanced sentence of 198 years is unconstitutionally excessive. This assigned error is likewise without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals no errors which require corrective action.
Accordingly, for the reasons set forth herein, defendant's convictions and sentences are hereby affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] Co-defendant, Lionel Redditt, was also charged in the bill of information. However, a severance was granted, and the two defendants were tried separately. This appeal only pertains to Prescott Smith's conviction.
[2] In his brief, defendant erroneously identifies this photograph as State Exhibit 6. The record shows State Exhibit 6 is a photographic lineup of defendant. The photo depicting the ATM is State Exhibit 4.
[3] LSA-C.Cr.P. art. 770 mandates a mistrial when a comment is made within the hearing of the jury by the judge, district attorney or a court official that directly or indirectly refers to (1) race, religion, color or national origin, (2) inadmissible other crimes committed by the defendant, (3) the defendant's failure to testify in his own defense, and (4) the refusal of the judge to direct a verdict.