**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**

**22-695**

**STATE OF LOUISIANA**

**VERSUS**

**JORIE JAKELL WALKER**

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 18-CR-1331
HONORABLE ANTHONY JUDE SALEME, JR., DISTRICT JUDGE

**********

**CANDYCE G. PERRET**
**JUDGE**

**********

Court composed of Candyce G. Perret, Guy E. Bradberry, and Wilbur L. Stiles, Judges.

**CONVICTION AND SENTENCE AFFIRMED;**
**REMANDED WITH INSTRUCTIONS.**

**Sherry Watters**
**Louisiana Appellate Project**
**Post Office Box 58769**
**New Orleans, LA 70158-8769**
**(504) 723-0284**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jorie Jakell Walker**

**M. Bofill Duhé**
**District Attorney**
**W. Claire Howington**
**Iberia Parish Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR PLAINTIFF:**
    **State of Louisiana**

**PERRET, Judge.**

Defendant, Jorie Jakell Walker, was charged by grand jury indictment with the second degree murder of Levonne Johnson, a violation of La.R.S. 14:30.1. A jury voted unanimously to convict Defendant, and he was subsequently sentenced by the court to life imprisonment without the benefit of probation or suspension of sentence. The judge stated that he would be eligible for parole under provision La.R.S. 15:574.4(F) because Defendant was seventeen at the time of the commission of the offense and he was indicted after August 1, 2017.

For the following reasons, we affirm Defendant's conviction and sentence. Further, the trial court is instructed to amend the Uniform Commitment Order to reflect the sentence was life imprisonment, not 999 years.

## FACTS:

On Monday, June 4, 2018, Katherine Jones was at her boyfriend's (Defendant's) house. They had a disagreement, and she called her long-time friend, the victim, Lavonne Johnson, to pick her up. Mr. Johnson picked up Ms. Jones in his mother's blue van. Also in the van were Jamiyon Bolden in the front passenger seat and Shantee' August in the rear passenger's seat. Ms. Jones sat behind the driver, Mr. Johnson. The group stopped at McDonalds, and all four went inside. Meanwhile, Defendant left his house on foot, and flagged down Joseph Broussard and his girlfriend, Tajzeniana Lafleur, who were riding in Ms. Lafleur's vehicle.[1] Mr. Broussard was driving. Defendant asked to be taken to Franklin. On the way,

---

[1]Ms. Lafleur initially testified that she knew the guy they picked up as Jorie (Joe), a neighbor she had seen "around." However, she could not identify him in court, and neither could Mr. Broussard.

Defendant asked to be dropped off at McDonald's. Before Ms. Lafleur and Mr. Broussard left the McDonald's parking lot, they heard gunshots.

Once at McDonald's, Defendant approached the victim's van, went to the driver's side, and pulled out a gun. When Ms. Jones saw Defendant, who appeared upset, she told the victim to go.[2] Defendant fired three shots, hitting Mr. Johnson three times. Jamiyon Bolden exited the van with his gun and ran after Defendant. When law enforcement respond to a call nearby heard the gunshots, they chased, apprehended, and arrested Defendant. The victim succumbed to his injuries at the scene.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent involving the sentence imposed. Additionally, we find the Uniform Commitment Order needs correction.

First, the trial court failed to impose the sentence at hard labor even though a sentence for second degree murder must be imposed at hard labor. La.R.S. 14:30.1. Thus, the sentence is illegally lenient. *State v. Perkins*, 13-245 (La.App. 3 Cir. 11/6/13), 124 So.3d 605. Although the authority to correct an illegally lenient sentence is granted and discretionary under La.Code Crim.P. art. 882, we will not recognize this illegally lenient sentence since the issue was not raised as an error. *See State v. Mayfield*, 18-420 (La.App. 3 Cir. 12/6/18), 261 So.3d 101, *writ denied*, 19-46 (La. 5/28/19), 273 So.3d 316.

---

[2]Ms. Jones testified that the other "boy" in the van (Jamiyon Bolden) had a gun.

2

Additionally, we find the Uniform Commitment Order needs correction. According to the transcript and the minutes of sentencing, the trial court sentenced Defendant for second degree murder to life imprisonment without benefit of probation or suspension of sentence. The Uniform Commitment Order, however, indicates the sentence imposed was 999 years. Recently, this court addressed an identical issue as follows:

Additionally, we find that the Uniform Commitment Order needs correction as to count one as well. According to the transcript and the minutes of sentencing, the trial court sentenced Defendant on count one (first degree rape) to life at hard labor, without benefit of parole, probation, or suspension of sentence. The Uniform Commitment Order, however, indicates the sentence imposed for first degree rape was 999 years. In *State v. Bringier*, 21-476, p. 2 n.1 (La.App. 1 Cir. 12/30/21), 340 So.3d 975, 977, *writ denied*, 22-157 (La. 4/5/22), 335 So.3d 837, the first circuit noted this identical issue in a footnote:

The commitment order reflects a sentence of 999 years. The sentencing minutes and sentencing transcript, however, reflect a sentence of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The sentencing transcript prevails in the event of a discrepancy in the record concerning the sentence. *See State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

Accordingly, the trial court is instructed to amend the Uniform Commitment Order to reflect the life sentence imposed, without benefit of parole, probation, or suspension of sentence.

*State v. Coutee*, 22-345, p. 13 (La.App. 3 Cir. 10/26/22), 353 So.3d 210, 219.

Accordingly, the trial court is instructed to amend the Uniform Commitment Order to reflect the life sentence imposed, without the benefit of probation or suspension of sentence.

**ASSIGNMENT OF ERROR NUMBER ONE:**

Defendant contends the trial court erred in denying his motion for a mistrial when Jamiyon Bolden, a State's witness, invoked his Fifth Amendment privilege in front of the jury. Near the close of the first day evidence was presented at trial,

3

State's witness Jamiyon "JJ" Bolden was brought into the courtroom to be sworn and sequestered, and he responded, "I plead the Fifth." The judge explained to Mr. Bolden that he was not being questioned; rather, he was being asked to take an oath. The following day, when called to testify, the following exchange occurred:

Q. Please state your name for the record.

A. Jamiyon Bolden.

Q. Mr. Bolden, do you know a person by the name of Lavonne Johnson?

A. I pled the Fifth.

Q. Okay. I'm going to ask you to pull the microphone up to your mouth and speak into it please. Can you get a little closer to it?

A. (Witness complies)

Q. Did you know a person by the name of Lavonne Johnson?

A. I pled the Fifth.

Q. Excuse me?

A. I pled the Fifth.

Q. Okay.

Immediately thereafter, the prosecutor indicated that there would be a hearing outside the presence of the jury regarding whether Mr. Bolden could assert his Fifth Amendment rights. The jury was removed, and after much discussion between the attorneys and the judge, it was decided that someone from the Public Defender's Office would be called in to talk to Mr. Bolden.

After Mr. Bolden met with counsel, he was put on the stand, where he indicated he wished to assert his Fifth Amendment rights and indicated that he had spoken to Ms. Green, an attorney provided by the Public Defender's Office. The court then advised Mr. Bolden:

Okay. I need to advise you that a witness does have Fifth Amendment Rights, but only when they're being questioned about something that the answer could possibly incriminate them. And I think when we left Mr. Colwart's question to you was, do you know this person? And you invoked your Fifth Amendment Right. There's some disagreement, but it's my appreciation now that your answering that question would not be something that would incriminate you and that you would not be entitled to just assert the Fifth to every question like that and that you could possibly by not, by refusing to answer that question you could be exposing yourself to being in contempt of court. In which if you're found guilty of that you could be ordered to pay a five hundred dollar ($500) fine or do six months in the parish jail for each such offense. So I wanted to advise you that on the record and I think there's going to be some additional information that your attorney wants to talk to you about. I think your attorney can tell you about that too and answer any questions you might have. But I want to at least let you know that. Okay? And I think there's some other information that your attorney may be able to give you, but for now I just wanted to put that on - - make you aware of that, advise you of that. Okay?

A. Yes, sir.

Q. Do you have any questions about what we just talked about?

A. No, sir.

Court recessed until such time as Ms. Green could meet with Mr. Bolden. The jury was excused for the weekend, and on Monday morning, before defense counsel moved for a mistrial on the grounds that Mr. Bolden had previously invoked his Fifth Amendment right in the jury's presence, Mr. Bolden was put on the stand outside the presence of jury to determine what he would testify to once trial resumed in the presence of the jury.

During this testimony, the prosecutor asked Mr. Bolden about their meeting on Wednesday while Mr. Bolden was in a holding cell. Mr. Bolden confirmed that the prosecutor explained to him the procedures concerning the Fifth Amendment. The two of them also spoke to Mr. Bolden's mother on the phone, and Mr. Bolden denied an agreement was reached that he would testify. Later that night, around 11:00 p.m., Mr. Bolden and his mother contacted the prosecutor about Mr. Bolden

5

being afraid and wanting protection [in prison]. Mr. Bolden confirmed that at the end of the conversation, they (the prosecutor, his mother, and him) were "good." He confirmed that he was "good" about where he was in the jail and that the prosecutor was going to speak to people about ensuring his safety. Mr. Bolden testified that he was not "good" about testifying. The prosecutor asked, "Well, why did - - did you tell me that?" and Mr. Bolden responded, "Yes, sir." Mr. Bolden confirmed that the two talked again after the minute clerk tried to swear him in, and Mr. Bolden said he told the prosecutor he was "going to revoke (sic) my right to the fifth amendment." Mr. Bolden testified that he did not recall his mother telling the prosecutor that Mr. Bolden was going to testify and "help him out." Mr. Bolden confirmed that the prosecutor said, "we're good?" when they parted ways after meeting on Thursday. He said his answer was not "yes"; rather he recalled saying "I'm gonna plead the fifth."

The judge denied the defense's motion for mistrial, reasoning:

> The Court based - - and Mr. Colwart kind of argued outside of what was in the facts, but based on Mr. Bolden's answers to Mr. Colwart's questions, he acknowledges that they had three separate conversations, two in person and one via a three-way that started with his mother. And that what the chief concern based on Mr. Bolden's answers to Mr. Colwart's questions was that as to his safety, not as to his potential to incriminate himself with his answers.

> I don't believe that Mr. Colwart, I don't believe that the State in this case called the defendant for the purpose of having him invoke the fifth amendment or knew that he was going to invoke his fifth amendment right.

> In addition, I believe Mr. Colwart is correct. The answer to which Mr. Bolden invoked the fifth was not a question that he could. Because it was not necessarily something that was going to incriminate himself.

> So for that reason I'm going to deny the Motion for Mistrial in this case.

6

. . . .

> But my ruling still stands as to Mr. Bolden answering, you know, any questions with regard and I think he's established that he's going to invoke with regard to the incidents of that day. So - - and I will be doing a neutralizing instruction saying that the jury is to draw no inference from that in favor of either - - in favor or against either the State or the defense as a result, as a result of that invocation.

Louisiana Code of Criminal Procedure Article 775(3) allows for the granting of a mistrial when "[t]here is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law[.]" A witness's invocation of the Fifth Amendment in the presence of the jury was addressed in *State v. Laviolette*, 06-92, pp. 13-16 (La.App. 5 Cir. 9/26/06), 943 So.2d 527, 535-36 (footnote omitted), *writ denied*, 06-2585 (La. 5/18/07), 957 So.2d 149:

> The privilege against self-incrimination granted by the Fifth Amendment to the United States Constitution is also assured by Article I, § 16 of the Louisiana Constitution (1974), which provides that "No person shall be compelled to give evidence against himself." The jurisprudence favors the determination of claims of privilege outside the jury's presence, considering the undue weight a jury might give to such a claim. In *State v. Wille*, 559 So.2d 1321, 1337-1338 (La.1990), the Louisiana Supreme Court stated:

>> This court has recognized that it is error to allow the prosecutor to call before the jury a witness who he knows will invoke the privilege against self incrimination, when there is no other purpose for calling the witness except to have the jury draw evidentiary inferences from the fact that the witness claimed the privilege.

> *See also, State v. Berry*, 324 So.2d 822, 830 (La.1975), *cert. denied*, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976); *State v. Gerard*, 96-366, pp. 11-12 (La.App. 5th Cir.11/14/96), 685 So.2d 253, 258.

> In the leading case of *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), the United States Supreme Court considered the question of whether the trial court committed reversible error in allowing prosecutors to question two witnesses about whether they engaged in criminal activity with the defendant, although it was known that the witnesses were going to claim their privilege against self-incrimination. The Court held that reversible error can occur either when "the Government makes a conscious and flagrant attempt to build

7

its case out of inferences arising from use of the testimonial privilege," *Id*. at 186, 83 S.Ct. at 1154-1155, or when "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Id*. at 187, 83 S.Ct. at 1155.

This Court has employed the two-part *Namet* test in determining whether the trial court has committed reversible error in allowing a witness to invoke his Fifth Amendment privilege in the jury's presence. *State v. Mills*, 04-489, p. 6, (La.App. 5th Cir.3/29/05), 900 So.2d 953, 962, *writ denied*, 05-1470 (La.1/13/06), 920 So.2d 235; *State v. Smith*, 04-340, p. 8 (La.App. 5th Cir.10/26/04), 888 So.2d 280, 287.

In *State v. Smith*, supra, this Court, finding no reversible error, noted that the testifying witness, who was a co-defendant and had already been convicted of the crime, had no valid Fifth Amendment privilege to assert. Similarly, in this case, the Defendant had no valid Fifth Amendment privilege to assert and he was under court order to testify.

Applying the *Namet* analysis, we find nothing in the record to indicate the State made a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege. To the contrary, it appears that the district attorney did not believe Arceneaux could assert the privilege and was of the view that he could be required to testify under La.C.Cr.P. art. 439.1. The entire matter was aired before the court and there is no evidence of prosecutorial misconduct. Second, we do not find that Arceneaux's assertion of his right not to testify added critical weight to the state's case in a form not subject to cross-examination or that it unfairly prejudiced the Defendant. The only question asked of Arceneaux before he asserted privilege was how old he was. It is difficult to conclude that his assertion of his Fifth Amendment privilege in response to that question prejudiced the Defendant. No further questions were asked and Arceneaux was excused. The trial judge ruled that Arceneaux could not be recalled, consistent with his earlier ruling that he would not allow the State to ask Arceneaux numerous questions, creating factual inferences, while the witness refused to answer.

Defense counsel had advised the jury during opening argument that Arceneaux was the person who shot the victim and that he had been convicted of first degree murder. The State did not dispute that. Rather, it was the defense contention that Defendant, although present at the crime, was an innocent bystander. However, the Defendant's admission that he was with Arceneaux on the night and time of the crime and the victim's daughter's testimony that Defendant was not an innocent spectator but a participant, provided sufficient evidence of the Defendant's guilt. Therefore we find the assertion by Arceneaux of his

Fifth Amendment privilege was not reversible error. This assignment of error lacks merit.

We find the trial court did not err in denying the motion for mistrial. Although the prosecutor, after speaking to Mr. Bolden and his mother, may not have known that Mr. Bolden was going to invoke his privilege (as found by the trial court), even assuming the prosecutor *did* know, there is no indication in the record that his purpose in calling the witness was to have the "jury draw evidentiary inferences from the fact that the witness claimed the privilege." *Id.* at 535. The only question asked of Mr. Bolden to which he invoked his Fifth Amendment right in front of the jury was whether he knew the victim, Lavonne Johnson. Additionally, we find this case does not meet the criteria in *Namet v. United States,* 373 U.S. 179, 186-87, 83 S.Ct. 1151, 1154-1155 (1963), in that there is no indication that "the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege," or when "in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant."

Additionally, Defendant claims the neutralizing instruction given by the judge to the jury was not sufficient to cure the error in this case. The judge instructed the jury:

> One other matter, ladies and gentlemen of the jury, you may have heard a witness indicate the invocation of the fifth amendment right against self-incrimination saying, I take the fifth or I plead the fifth. The jury is not to infer anything from that. Either in favor of or against either the State or the defense as a result of that invocation.

When the instruction was given, there was no objection by the defense, and they do not indicate in brief that they objected to this instruction. Additionally, on

9

appeal, Defendant does not say how the instruction was insufficient beyond saying that a "jury must be told not to draw any inference from the witness' failure to testify." We find this was covered in the court's instruction above. Accordingly, we find no merit to this assignment of error.

## ASSIGNMENT OF ERROR NUMBER TWO:

In this assignment of error, Defendant challenges the constitutionality of La.R.S. 15:574.4. "[A] constitutional challenge may not be considered by an appellate court unless it was properly pleaded and raised in the trial court below." *State v. Hatton*, 07-2377, p. 13 (La. 7/1/08), 985 So.2d 709, 718. Defendant did not raise this constitutionality challenge in the trial court; accordingly, we will not consider this assignment of error.

## ASSIGNMENT OF ERROR NUMBER THREE:

Defendant contends his mandatory life sentence is excessive. Specifically, he contends that defense counsel did not present evidence, mention his lack of criminal history, request a presentence investigation report, nor file a motion for downward departure from his mandatory life sentence. He contends this was a single, impulsive incident, which was personal to Defendant and the victim (allegedly provoked by Mr. Bolden) that posed no danger to the public, yet none of these factors were presented by his attorney. Additionally, Defendant notes that counsel objected to the sentence but filed no motion to reconsider sentence. Further, he contends that the trial judge failed to consider mitigating facts or to offer any La.Code Crim.P. art. 894.1 factors to support the life sentence. Defendant requests his sentence be vacated and the case remanded for a full sentencing hearing.

Second degree murder carries a mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence. La.R.S. 14:30.1(B).

10

However, when as here, a defendant is under the age of eighteen at the time of the commission of the offense, parole eligibility is treated differently:

> Defendant was convicted of second degree murder in violation of La.R.S. 14:30.1, and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, over his objection that he was only 16 years old at the time he committed the offense. The court of appeal affirmed defendant's conviction and sentence, *State v. Graham,* 11-0380 (La.App. 1 Cir. 9/14/11), 90 So.3d 543, rejecting the argument that his mandatory life sentence without parole is excessive, citing among other cases *Graham v. Florida* 560 U.S. [48], 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (Eighth Amendment precludes sentencing juvenile offenders to life imprisonment without parole for non-homicide crimes). After the court of appeal issued its decision, and while defendant's writ was pending in this Court, the United States Supreme Court determined that mandatory life imprisonment without parole for those offenders under the age of 18 years at the time they committed a homicide offense violates the Eighth Amendment prohibition of "cruel and unusual punishments." *Miller v. Alabama,* 567 U.S. [460], [473-75], 132 S.Ct. 2455, 2466, 183 L.Ed.2d 407 (2012). Unlike the case in *Graham,* the *Miller* court did not establish a prohibition against life imprisonment without parole for juveniles but instead required that a sentencing court consider an offender's youth and attendant characteristics as mitigating circumstances before deciding whether to impose the harshest possible penalty for juveniles. Therefore, we grant to remand to the district court for reconsideration after conducting a sentencing hearing in accord with the principles enunciated in *Miller* and stating the reasons for reconsideration and sentencing on the record.

*State v. Graham*, 11-2260, pp. 1-2 (La. 10/12/12), 99 So.3d 28, 28-29 (per curiam).

The judge's comments when imposing Defendant's sentence were as follows:

> I've taken into consideration the sentencing guidelines of 894.1. Under the crime of which the defendant was convicted Title 14 Section 30.1 there's only one sentence. Subsection "B", whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.
>
> However, based on the defendant[']s age at the time this offense occurred, which was seventeen (17).
> . . . .
>
> And the fact that he was indicted after August 1st of 2017, he would be, he would be eligible for parole under certain circumstances which are enumerated in Title 15 Section 574.4(F).

11

Having sat through the trial, it's, it brings me no pleasure to hand down the sentence I'm about to hand down, especially for - - we had one life lost and another person serving significant jail sentence over what I would call a very inconsequential matter. So it brings me no pleasure, but under the law of Louisiana and specifically the sentence under Title 14 Section 1430.1 [sic], Mr. Jorie Jakell Walker, please stand.

For your conviction of second degree murder in violation of Title 40 [sic] Section 30.1, I sentence you to serve life imprisonment, without benefit of probation or suspension of sentence. You are going to be eligible for parole under provision of Title 15 Section 574.4 Subsection "F".

Our review of the record revealed that after Defendant's sentence was imposed, defense counsel stated, "Judge, I also [sic] he has a right to appeal. He can file an appeal within thirty (30) days of today's sentence. He also has a right to an appeal." We find that this was not an objection to the sentence, and a motion to reconsider sentence was not subsequently filed. Thus, this court's review is limited to that of constitutional excessiveness:

Louisiana Code of Criminal Procedure Article 881.1 provides the mechanism for preserving the review of a sentence for appeal, and in felony cases, requires the filing of a motion to reconsider the sentence within "thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence[.]" La.Code Crim.P. art. 881.1(A)(1). The motion, whether orally or in writing "shall set forth the specific grounds on which the motion is based." La.Code Crim.P. art. 881.1(B).

Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

La.Code Crim.P. art. 881.1(E).

Defendant's failure to make or file a motion to reconsider sentence can preclude him from appealing his sentence. *State v. Duplantis*, 13-424 (La.App. 3 Cir. 11/27/13), 127 So.3d 143, *writ denied*, 14-283 (La. 9/19/14), 148 So.3d 949. However, this court has previously reviewed claims of excessiveness where no motion to

reconsider sentence was filed or objection made, performing a bare excessiveness review. *State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491. We choose to do so here.

*State v. Guillory*, 21-590, pp. 6-7 (La.App. 3 Cir. 3/9/22), 350 So.3d 893, 896.

However, as noted above, Defendant contends counsel was ineffective in failing to seek a downward departure and in failing to file a motion to reconsider sentence. The second circuit recently addressed a similar situation in *State v. Parker*, 54,947, pp. 21-25 (La.App. 2 Cir. 3/1/23), __ So.3d __, __:[3]

Where no motion to reconsider sentence is filed, the defendant is relegated to a claim of constitutional excessiveness. *State v. Nabors*, 53,357 (La. App. 2 Cir. 4/22/20), 295 So. 3d 974, *writ denied*, 20-00709 (La. 10/6/20), 302 So. 3d 527. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Jackson*, 52,606 (La.App. 2 Cir. 4/10/19), 268 So. 3d 1217, *writ denied*, 19-00699 (La. 10/15/19), 280 So.3d 560, and *writ denied*, 19-00797 (La. 1/28/20), 291 So.3d 1056.

Where there is a mandatory sentence, there is no need for the trial court to justify, under La. C. Cr. P. art. 894.1, a sentence it is legally required to impose. *State v. Burd*, 40,480 (La.App. 2 Cir. 1/27/06), 921 So. 2d 219, *writ denied*, 06-1083 (La. 11/9/06), 941 So.2d 35.

The mandatory sentence for second degree murder is punishment by life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1(B). The argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. *State v. Parker*, 416 So.2d 545 (La. 1982); *State v. Roberson*, 40,809 (La.App. 2 Cir. 4/19/06), 929 So. 2d 789.

To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, namely, that, because of unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that

---

[3]This case is cited at 2023 WL 2290193.

are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672; *State v. Parker*, 47,952 (La.App. 2 Cir. 4/10/13), 113 So. 3d 471, *writ denied*, 13-1051 (La.11/15/13), 125 So.3d 1101.

The mandatory sentence of life imprisonment for a conviction of second degree murder is presumed to be constitutional, and Parker failed to demonstrate that he is an "exceptional" defendant for whom a downward departure from the statutory minimum sentence is required. Defendant's age and status as a Vietnam war veteran with no criminal record are inadequate to show that the sentence is inappropriate for him. Moreover, when compared to the severity of the offense, defendant's sentence is neither grossly disproportionate nor shocking to the sense of justice. We find, therefore, that defendant's life sentence is not constitutionally excessive.

We next address Parker's alternate argument of ineffective assistance of counsel due to his lawyer's decision to withdraw before filing a motion to reconsider sentence. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court than by appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing. However, when the record is sufficient, an appellate court may resolve this issue on direct appeal in the interest of judicial economy. *State v. Nixon*, 51,319 (La.App. 2 Cir. 5/19/17), 222 So.3d 123, *writ denied*, 17-0966 (La. 4/27/18), 239 So.3d 836.

The mere failure to file a motion to reconsider sentence does not in and of itself constitute ineffective assistance of counsel. A basis for ineffective assistance of counsel may only be found if a defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different. *State v. Jones*, 46,712 (La.App. 2 Cir. 11/02/11), 80 So.3d 500, *writ denied*, 12-0016 (La. 08/22/12), 97 So.3d 356; *State v. Louis*, 32,347 (La.App. 2 Cir. 10/27/99), 744 So.2d 694. Parker's sentence, life imprisonment without the benefit of parole, probation, or suspension of sentence, was the mandatory penalty for the crime he was convicted of. Parker failed to allege how his age and lack of prior criminal record at the time of the offense justified a deviation from the mandatory sentence. He likewise did not allege any special circumstances that would support a deviation from the mandatory sentence provided in La. R.S. 14:30.1. Parker failed to show that he is exceptional or that the mandatory life sentence is not meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of the case. See *State v. Collins*, 09-1617 (La.App. 1 Cir. 02/12/10), 35 So.3d 1103, *writ denied*, 10-0606 (La. 10/08/10), 46 So.3d 1265.

Because Parker failed to prove that a motion to reconsider the sentence would have resulted in a different sentence, we cannot find that the failure of his trial counsel to file a motion to reconsider sentence constitutes ineffective assistance of counsel. *State v. Brooks*, 52,334 (La.App. 2 Cir. 11/14/18), 260 So.3d 713, *writ denied*, 18-2031 (La. 4/15/19), 267 So.3d 1121; *State v. Lee*, 26,542 (La.App. 2 Cir. 05/12/94), 636 So.2d 634. Accordingly, this assignment of error is also without merit.

A life sentence for second degree murder is statutorily mandated, and as discussed in *Parker*, there was no need for the trial court to justify the sentence under La.Code Crim.P. art. 894.1. Additionally, we find Defendant's young age, his first offender status, and this single, impulsive incident were not enough to justify a downward departure from the mandatory life sentence. *See State v. Cofer*, 16-871 (La.App. 3 Cir. 4/5/17), 216 So.3d 313, *writ denied*, 17-1150 (La. 5/11/18), 241 So.3d 1014, in which this court affirmed a mandatory life sentence without benefits for second degree murder despite defendant being a first time offender, college student, and a mother of three.

Defendant's age and the circumstances surrounding the murder were known to the sentencing judge when he imposed sentence. Beyond his first offender status, Defendant has not suggested any particular information a presentence investigation report, which is not mandatory per La.Code Crim.P. art. 875, may have included that would have lessened his sentence.

Accordingly, we find Defendant has not shown counsel was ineffective in failing to file a motion seeking a downward departure, in failing to file a motion to reconsider sentence, and in failing to request a presentence investigation report. Accordingly, we find no merit to this assignment of error.

15

**CONCLUSION:**

In conclusion, we affirm Defendant's conviction and sentence. Further, the trial court is instructed to amend the Uniform Commitment Order to reflect the sentence was life imprisonment, not 999 years.

**CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.**